MELBOURNE C. SMITH AND THOMAS M. HOYT

*vs.*

BANGOR & AROOSTOOK RAILROAD COMPANY.

Aroostook. Opinion September 28, 1916.

*Duty of common carriers to shippers of freight. What is reasonable care on part of common carriers.*

1. It is the duty of a common carrier to use reasonable care and diligence in the transportation of freight given to it to carry.
2. What is reasonable diligence by a railroad company in the transportation of freight depends upon circumstances, and one of the circumstances in transportation is the perishable character of the freight, or otherwise.
3. When a railroad company accepts perishable property, such as potatoes, to be shipped over the line at a season of the year, when in the course of nature severely cold weather is to be apprehended, it is bound to use great diligence in forwarding the property.
4. A shipper, even of perishable goods, cannot require his freight to be started until the arrival of a freight train.
5. But when there were accidents and delays, avoidable or not, and when the freight has lost its regular schedule, and, being perishable, is in imminent danger of being lost, reasonable care may require a carrier to do special service, and expedite the carriage, without waiting for a regular train.
6. When a carrier permitted a car of potatoes to stand upon a siding, in freezing weather, from 36 to 40 hours, without apparent necessity, or apparent reason, except the waiting for the arrival of a regularly scheduled freight train which might take it along, the jury was warranted in finding that it was guilty of negligence.

Action on the case to recover damages for alleged negligence of defendant company in failing to reasonably transport goods, or property of the plaintiff delivered to defendant. Defendant pleaded general issue and brief statement alleging that the delay in transit was unavoidable on account of the severity of the winds and snow-

storms, and that the defendant company used reasonable diligence in transporting the property of the plaintiff. Verdict for plaintiff. Motion for new trial filed by defendant. Motion overruled.

Case stated in opinion.

*Hersey & Barnes,* for plaintiff.

*J. F. Gould, and Powers & Guild,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, BIRD, HALEY, PHILBROOK, JJ.

SAVAGE, C. J. Action on the case for negligent delay in transportation of car of potatoes from Presque Isle, Maine, to Onley, Va., in consequence of which some of the potatoes were frozen en route. The case comes up on the defendant's motion for a new trial.

The potatoes were in a refrigerator car furnished by the defendant, which was so fitted as to protect the potatoes from freezing for from 10 to 13 days in ordinary winter weather, and from 5 to 7 days in "cold snaps." The usual running time for freight trains from Presque Isle to Northern Maine Junction, where the potatoes were to be delivered to the succeeding carrier, the Maine Central Railroad, is about twenty-four hours. And the usual time of transportation from Presque Isle to Onley is about eleven days.

The car was loaded at Riverview siding, three miles north of Presque Isle, on Friday, February 6, 1914, but too late to be taken by any regular freight train that day. But on February 7 it was moved by the defendant to Presque Isle, the billing point, but too late for the regular day freight trains. In fact a bill of lading had been issued, February 6. This car was one of twenty-two cars of potatoes which made up train "Extra 70." The train left Presque Isle at 12.15 A. M., February 8. It encountered various troubles from drifting snow on the track. Apparently, under the conditions, the load was too heavy for the locomotive. And this car with three others was set off during the forenoon of February 8, at Mapleton, six miles from Presque Isle, where it remained until 6 P. M., February 9, when it was picked up by the first regular freight train that passed. It reached Northern Maine Junction at 11.20 P. M., February 13, one hour short of six days from Presque

Isle.  The distance was 184 miles.  In the meantime it had stood on sidings at Oakfield thirty-seven and one-half hours, and at Millinocket thirty-six hours.

But for the delay at Mapleton, there is nothing in the case to show that the car would not probably have run through to Northern Maine Junction, and to a warmer climate in ample time to prevent the potatoes from freezing, though it would probably have been unable to make schedule time, for the track conditions were undoubtedly bad.

By reason of the delay, the car got in behind a derailed passenger train at Belvidere, on February 10, and two stalled freight trains south of Millinocket, February 12, and got into a severe storm, accompanied by extreme cold, which caused it to be laid up at East Newport, on the Maine Central Railroad from 5.15 P. M., February 14 to 11.55 A. M., February 16.  We think it unnecessary to discuss in detail the misadventures of the car after it left Mapleton.  The delay at Mapleton, as we have seen, brought the car into the teeth of cumulative troubles further on.

The defense is that the potatoes were unavoidably delayed in transit by wind and snow storms of great severity, and that the defendant and its connecting carriers used all reasonable diligence in the transportation.

It is certain the weather conditions on February 7 and 8 were bad, unusually bad, but it is not shown that they were unprecedented, phenomenal or extraordinary, in the sense that they should not have been anticipated, in an Aroostook winter.  The winter had been severe, with a somewhat larger snowfall than usual.  In ploughing out the railroad track high shoulders of snow had been left on either hand.  When a wind arose during or after a snow storm, it was inevitable that the snow would drift in onto the track between the shoulders, and make railroading difficult.  And the longer the drifts remained unploughed the worse it was.

It began snowing at Presque Isle at 4 A. M., February 7, and continued into the night following.  From 4 to 6 inches of snow fell.  A high wind was blowing that night.  The temperature during the day was around zero.  Although the defendant knew all this, and knew of the shoulders of snow, and the dangers of drifting snow, and the vicissitudes of a winter in Northern Maine, yet no

plough was sent over the line that day or night. Not until 8 or 9 A. M. the next day did one start from Caribou, which went over the line once that day. Under these conditions, the defendant started this train of perishable freight, during, or at least on the heels of the storm, at midnight. The train ran into snow drifts. This car and three others were set off at Mapleton. The lightened train went on. It had more trouble with snow. Its engine became disabled. It was found by an engine following and set onto a siding.

It was the duty of the defendant to use reasonable care and diligence in the transportation of this car, and to move it without unreasonable delay. *Johnson* v. *Railroad,* 111 Maine, 267. What is reasonable diligence depends upon circumstances, and one of the circumstances in transportation is the perishable character of the freight, or otherwise. In *Young* v. *M. C. R. R. Co.,* 113 Maine, 117, we quoted, with approval, the following language used by another court: "When a common carrier accepts perishable property, such as potatoes, to be shipped over its line at a season of the year when in the course of nature, severely cold weather is to be apprehended; though the weather may be warm when the freight is received, the carrier is bound to use great diligence in forwarding the property."

In this case we think a jury might reasonably have found that the defendant did not use reasonable care, in that it did not keep its track seasonably ploughed out, that it permitted the storm to get too far ahead of it, and that the delay at Mapleton was not due to unavoidable difficulties, but to difficulties that might have been avoided by the exercise of reasonable care and foresight. Again, a jury might find that the car was left at Mapleton an unreasonable length of time. The track appears to have been open all day, February 9, but the car was not moved until 6 P. M., by the first regular train. It is true that a shipper, even of perishable goods, has no right to require his freight to be started until the arrival of a regular train. *Johnson* v. *Railroad,* supra. Yet when there have been accidents or delays, avoidable or otherwise, and when the freight has lost its regular schedule, and, being perishable, is in imminent danger of being lost, we can conceive of cases where we think reasonable care would require a carrier to do a special

service, and expedite the carriage, without waiting for a regular train. And if the jury found, as it might, that the defendant in this case was guilty of negligence in not starting the car from Mapleton early on February 9, we should not disturb their verdict. Had the defendant done so, this car, so far as anything is shown in the case, would in all probability have proceeded on its way in advance of the derailed passenger train and the stalled freight trains which delayed it on February 10 and 12, and have preceded the storm which delayed it at East Newport, February 14 to 16. The verdict is sustainable.

*Motion overruled.*